**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN C. OLIVER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **ARAMARK FOOD INC., ARAMARK** | : | |
| **SUPERVISOR TASSONE, PRIME CARE** | : | |
| **MEDICAL, INC., SUSIE, Prime Care** | : | |
| **Medical Supervisor, CAPTAIN CASTRO,** | : | |
| **J. MARTIN, "JS", JANE/JOHN** | : | |
| **DOE and CDW S. SMITH** | : | **NO. 22-467** |

**MEMORANDUM**

**Savage, J.**                                                                 **August 30, 2023**

Plaintiff Brian C. Oliver, a pretrial detainee at Berks County Prison ("BCP") when he filed this case,[1] brought this *pro se* civil rights action claiming constitutional violations based on his prison diet and his inability to use the prison library computer.  He names as defendants Aramark Food, Inc., Aramark Supervisor Tassone, Prime Care Medical Inc., Prime Care Supervisor Susie, Captain Castro, J. Martin, "JS", Jane/John Doe, and CDW S. Smith. He seeks leave to proceed *in forma pauperis*.[2]  We shall grant Oliver leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] According to the Pennsylvania Department of Corrections Inmate Locator, Oliver is now housed at SCI Phoenix.

[2] A prisoner seeking to proceed *in forma pauperis* is required to provide the Court with a copy of his prison account statement for the six-month period prior to the filing of the action.  28 U.S.C. § 1915(a)(2). Oliver asserted in an affidavit that he had difficulty obtaining a copy of his prison account statement, but later submitted one.  Aff. of Poverty, ECF No. 7; Prison Account Stmt., ECF No. 9.

**FACTUAL ALLEGATIONS**

Oliver alleges that Aramark and Tassone discriminated against him due to his race and religion, and Tassone retaliated against him by including large amounts of kidney beans in his diet.[3]  Oliver, who describes himself as a light-skinned African-American and a Rastafarian requiring a religiously compelled vegetarian diet, claims he was fed "a large amount of kidney beans every day twice a day" and was not given bread, rice, or cheese that other prisoners received.[4]  When he complained to a correctional officer about his food, Tassone referred to him as "the White Rastafarian," laughed, and told the officer that whatever was on his food tray was what Oliver was supposed to receive for his vegetarian diet.[5]  Despite his complaints, he continued to receive kidney beans in his lunch and dinner, and no bread, cookies, chips, pretzels, or anything containing sugar.[6]  When Oliver filed a grievance about his diet, he was informed that those items were replaced with nutritional foods.[7]  He claims his religion does not forbid these types of foods, only the consumption of flesh.[8]  According to Oliver, other religiously mandated diets that contain certain restrictions do not exclude these types of foods.[9]

---

[3] Compl. at 5, ECF No. 2.  We adopt the pagination supplied by the Court's CM/ECF docketing system.

[4] *Id*. at 5-6.

[5] *Id*. at 6.

[6] *Id*.

[7] *Id*.

[8] *Id*.

[9] *Id*. at 7.

After a week on the same diet, Oliver informed Tassone that the food was giving him severe gas pains, bloating, constipation, and hemorrhoidal bleeding.[10] Nonetheless, he continued to receive beans in his meals for another week. Oliver claims the defendants acted with deliberate indifference to his dietary and medical needs.[11] He asserts that Tassone intended to punish him for his religious beliefs and to prevent him from following his religious diet.[12]

Oliver claims he removed himself from the religious diet on January 18, 2022. The next day, he received a response from Tassone to a grievance he had labeled as an emergency on January 13, 2022. Although he alleges the response was supposed to be addressed within 48 hours, Tassone responded the day after Oliver had removed his request for a religious diet.[13] In his response, Tassone advised Oliver he is "correcting the issue with [the] meal plan."[14] Oliver asserts he has suffered anxiety, chest pain, dizziness, shortness of breath and stress headaches as a result of Tassone's conduct. He does not allege these symptoms were a result of his limited diet.[15]

Oliver also brings claims against Prime Care Medical and its supervisory employee "Susie." He asserts Prime Care and Susie failed to answer his sick call slips about his digestive symptoms for 12 days.[16] When he was finally seen by an unnamed medical

---

[10]   *Id.*; Grievance, Jan. 13, 2022 (attached as Ex. F to Pl.'s Notice, ECF No. 6).

[11]   Compl. at 7.

[12]   *Id.* at 8.

[13]   *Id.*

[14]   *Id.*

[15]   *Id.* at 9.

[16]   *Id.* at 9-10.

provider, he was given no pain medication and no physical examination was performed.[17] Susie told Oliver she was unaware that he had filed a grievance about his diet.[18] When Oliver asked her to stop the practice of feeding him large amounts of kidney beans, she informed him that Prime Care does not get involved with dietary issues and he would have to deal with Aramark "to figure out another way to address [his] dietary concerns."[19] Oliver alleges that Prime Care's delaying or denying him medical care for the symptoms he suffered from his food plan "place[d] a substantial burden on me to modify my behavior to violate my dietary religious beliefs . . . ".[20]

Oliver also asserts that he was denied access to the courts because the prison law library computer "broke."[21] He claims he could not "pursue legal cases in the 3rd Circuit to present claimed violations in my case to be able to have my case dismissed at the magisterial level at my preliminary hearing."[22]  He asserts that as a result, he remained in detention pending his trial.[23]

Despite his grievances, the law library computer was not fixed.[24]  Defendant Captain Castro allegedly gave him "empty promises" about fixing the computer, resulting in Oliver's inability to secure bond at his preliminary hearing.[25]  Defendant J. Martin, the

---

[17]   *Id*.

[18]   *Id*. at 10-11.

[19]   *Id*. at 11.

[20]   *Id*.

[21]   *Id*. at 13.

[22]   *Id*.

[23]   *Id*.

[24]   *Id*.

[25]   *Id*. at 14.

prison business manager, another official named "JS", and an unknown Jane/John Doe official allegedly violated his right to access the courts "by refusing to certify or sign" his prison account statement unless Oliver forwarded his "whole 1983 claim to his department.  [Defendant Martin] is refusing to sign the account statement unless I forward my confidential legal work [so that] he can obtain the information of what's in my claim and whom my claim is against."[26]

Oliver also asserts a denial of access to the courts claim against CDW S. Smith "for refusing me legal supplies i.e. legal envelope to be able to send out my 1983 claim being an indigent inmate I can't purchase said envelope."[27]  Smith's denying him an envelope allegedly caused him to have anxiety and panic attacks.[28]  He alleges that Castro, Martin, Smith, and JS caused him to be time barred in another civil matter filed in this Court, Civil Action Number 19-5084, when this Court "incorrectly sent [an Order] to another inmate by the name Brian C. Oliver" located at another institution.[29]  He asserts had he been able to access the library, he could have filed an appeal or Rule 60 motion to have the case reopened.[30]  Castro did not address the issue of the law library's closure, which remained closed from November 2, 2021 to December 9, 2021.[31]

---

[26]     *Id.* at 14-15.

[27]     *Id.*

[28]     *Id.*

[29]     *Id.* at 17.

[30]     *Id.*

[31]     *Id.* at 18.

**STANDARD OF REVIEW**

The Prisoner Litigation Reform Act ("PLRA") requires a court to screen a prisoner complaint for possible dismissal before or as soon as practical after docketing.  28 U.S.C. § 1915A(a).  The court must dismiss the action if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  *Id.* § 1915(e)(2)(B).

A court may dismiss an action "at any time" once it is filed.  Thus, a court has the discretion to evaluate an *in forma pauperis* application before, after or when screening the complaint.  *Brown v. Sage*, 941 F.3d 655, 660 (3d Cir. 2019).

In determining whether a complaint fails to state a claim under § 1915(e), a court applies the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  The complaint must contain sufficient facts, which accepted as true, show that the plaintiff is entitled to relief.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (citing *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  "[M]ere conclusory statements do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because Oliver is proceeding *pro se*, we construe his allegations liberally.  *Shorter*, 12 F.4th at 374 (citing *Perez*, 792 F.3d at 774).

**DISCUSSION**

To establish a claim under section 1983, a plaintiff must allege facts, which if proven, establish: (1) the deprivation of a right secured by the Constitution or the laws of the United States; and (2) the person depriving plaintiff of the right acted under color of

6

state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (citation omitted).

### Religiously Based Diet and Retaliation Claims

### Defendant Tassone

It appears Oliver is asserting claims against Tassone based on his providing him a diet consisting mainly of kidney beans.

The Due Process Clause prohibits prison officials from imposing conditions that amount to punishment of a pretrial detainee. *Hubbard v. Taylor*, 399 F.3d 150, 157-58 (3d Cir. 2005) ("*Hubbard I*") (quoting *Bell v. Wolfish*, 441 U.S. 520, 530 (1979)).  Pretrial detainees are afforded greater constitutional protection under the Fourteenth Amendment than that provided to convicted prisoners under the Eighth Amendment. *Id.* at 167 n. 23 (citation omitted).

In determining whether a pretrial condition rises to the level of punishment, we examine whether it is imposed for the purpose of punishment or is "an incident of some other legitimate governmental purpose." *Id.* at 158 (quoting *Bell*, 441 U.S. at 538–39.). Undoubtedly, there will rarely be an expressed intent to punish. Consequently, we must consider whether the condition is reasonably related to a legitimate government purpose and whether it is excessive in relation to that purpose. *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir.2008) ("*Hubbard II*") (quoting *Union Cnty. Jail Inmates v. Di Buono*, 713 F.2d 984, 992 (3d Cir.1983)).

Given this framework, we engage in a two-step inquiry to determine whether a pretrial detainee's confinement conditions violate his substantive due process rights. *Union Cnty. Jail Inmates*, 713 F.2d at 992 (citing *Bell*, 441 U.S. at 542). First, we ask

whether the conditions serve any legitimate purposes. *Hubbard II*, 538 F.3d at 232 (quoting *Union Cnty. Jail Inmates*, 713 F.2d at 992). Second, if so, we determine whether the conditions are rationally related to that purpose. *Id.* (quoting *Union Cnty. Jail Inmates*, 713 F.2d at 992).

In determining whether a plaintiff has stated a claim, courts generally consider only the allegations of the complaint, exhibits attached and documents that are "integral to or explicitly relied upon in the complaint." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (citing *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020)). Because Oliver attaches communications and grievances he made regarding his deprivation of food and religious retaliation allegations, we consider them in deciding whether he has failed to state a claim.

Oliver's alleged deprivation of the food items he requested (bread, sugar, cookies, chips, pretzels) does not amount to a punishment. He was provided a vegetarian diet, with beans and alternative food items. Based on his complaint and its attachments, he received kidney beans and "food items such as more fruit and peanut butter" for lunch and dinner.[32] Nothing in the complaint suggests that he was deprived of breakfast or that his meals were nutritionally inadequate. The allegation that he was subjected to two weeks of a large amount of beans caused only temporary discomfort. Specifically, Oliver alleges that the beans gave him severe gas/gas pains, stomach bloating and

---

[32] Grievance Response, Jan. 19, 2022, to Oliver Grievance, Jan. 12, 2022 (attached as Ex. A to Pl.'s Notice, ECF No. 6).

constipation.[33] The diet "brought on hemorrhoids that are very painful with bleed and swell to the point to were (sic) I got to stand or lay down and can't sit to the pain."[34]

Within a week of when Oliver made Tassone aware of his pain and other symptoms, Tassone responded that the issue would be fixed. On January 19, 2022, Tassone responded to Oliver's January 13, 2022, grievance stating: "The only time the meal plan called for beans was Tuesday every other week. This has been addressed with the works [sic] along with correcting the issue on the meal plan."[35] By that time, Oliver had removed himself from the vegetarian-only diet.[36]

Placing Oliver on the vegetarian diet complied with his religious accommodation request.  Replacing "cookies, chips, pretzels" and "snack foods" with "nutritionally equal food items such as more fruit and peanut butter" is reasonably related to a legitimate goal. Tassone provided Oliver with alternative, religiously sanctioned food items in accordance with his religious accommodation request.  At the point the altered meal plan caused Oliver discomfort, Tassone responded that the provision of beans in his meals would be "addressed" and "correct[ed]".  The condition had not become "excessive in relation to the purpose…". *Hubbard I*, 399 F.3d at 160 (quoting *Bell*, 441 U.S. at 538-39).

Oliver also claims that Tassone's restrictions violated his right under the First

---

[33] Compl. at 7.

[34] *Id.*

[35] Grievance Response, Jan. 19, 2022, to Grievance, Jan. 13, 2022 (attached as Ex. F to Pl.'s Notice, ECF No. 6).

[36] Grievance Response, Jan. 20, 2022, to Grievance, Jan. 18, 2022 (attached as Ex. C to Pl.'s Notice, ECF No. 6).

Amendment to freely exercise his religion and were imposed in retaliation for his request for a religious accommodation.

To state a claim under the Free Exercise Clause of the First Amendment, a pretrial detainee must plausibly allege facts showing that a jail official's actions (a) impinged on his exercise of religion; and (b) did so in an unreasonable manner, that is, the official's actions were not "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see Mayo v. Cnty. of York*, 656 F. App'x 593, 596 (3d Cir. 2016) (explaining that *Turner* supplies the First Amendment Free Exercise legal standard applicable to pretrial detainees).

When Oliver requested a religious-only diet, he exercised a sincerely held religious belief.  Following his request, the institution's chaplain investigated his religious sincerity and approved the non-meat religious diet.[37]  For two weeks thereafter, his lunch and dinner meals consisted of a large amount of kidney beans and lacked "bread, cookies, potato chips, pretzels, …anything with sugar in it,… rice noodles."[38]  Oliver's religious exercise was not impinged.  His religious accommodation was met.  He does not allege that he was served food that, if consumed, would violate his religious beliefs.

To state a First Amendment retaliation claim, a pretrial detainee must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citations omitted).

---

[37] Compl. at 1.

[38] *Id.* at 2.

Oliver was engaged in protected conduct when he requested a religiously compelled vegetarian diet. But, his allegation that he was provided a large amount of kidney beans and was denied non-meat snack foods does not amount to a claim that he suffered adverse action.  He was provided a vegetarian diet, with beans and other food items such as fruit and peanut butter.  Although he asserts that he had to abandon his religious diet because the food caused him digestive issues, he was served a religiously limited vegetarian diet that he had requested.  When he complained, he was assured the meal plan would be corrected.

Oliver has not stated a cause of action against Tassone.

### *Defendant Aramark*

Oliver asserts a First Amendment claim against Aramark.  The Third Circuit Court of Appeals has held that a private company providing services to pretrial detainees pursuant to a contract "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability."  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 691 (1978)).  Rather, in order to hold a private food service company like Aramark liable for a constitutional violation under § 1983, Oliver must allege it had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]."  *Id.* at 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).

Oliver's Complaint is bereft of any allegations that Aramark had policies or customs that caused a constitutional violation.  To the extent Oliver is alleging that Aramark had a

policy of feeding religiously compelled vegetarians a diet featuring too many kidney beans, he has failed to state a plausible First Amendment religious exercise claim.

The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom. *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.") (citations omitted).   The government burdens religious exercise when it prohibits or penalizes a person's religious conduct or practice.   *Carson ex rel. O.C. v. Makin*, 142 S. Ct. 1987, 1996 (2022).

The free exercise inquiry asks whether the government has placed a substantial burden on the plaintiff's observation of his central religious belief or practice, and, if so, whether a compelling governmental interest justifies the burden.   *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) (internal citations omitted).   The plaintiff must allege facts showing that prison officials served him meals that his consuming would violate his sincere religious beliefs and the denial to serve him food consistent with those beliefs was not "reasonably related to legitimate penological interests."   *Turner,* 482 U.S. at 89.   Oliver does not allege that Aramark failed to serve him a vegetarian diet that complied with his religious beliefs.   He alleges only that certain foods for his lunch and dinner meals were replaced, and the diet caused him temporary digestive discomfort. Upon request, he was accommodated; and when he complained, he was assured that his meal plan concerns would be addressed.   He does not assert a plausible free exercise claim.   *See Riley v. DeCarlo*, 532 F. App'x 23, 28 (3d Cir. 2013) (holding that providing

only vegetarian meals to accommodate religiously observant inmates comports with the First Amendment); *Adekoya v. Chertoff*, 431 F. App'x 85, 88 (3d Cir. 2011) (same).

For these reasons, Oliver's free exercise and retaliation claims against Aramark shall be dismissed. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

### Deliberate Indifference to Serious Medical Needs

Oliver claims Prime Care and "Susie", its supervisory employee, were deliberately indifferent to his serious medical needs.[39]  The claims against Prime Care are analyzed under the same standard as the claims against Aramark. To hold Prime Care liable, Oliver must assert that Prime Care had a policy or custom and that the policy or custom caused the constitutional violation. *Natale*, 318 F.3d at 583-84; *Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted). Oliver has failed to do so.  Accordingly, the claims against Prime Care will be dismissed.

"Pretrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause." *Boring v. Kozakiewicz,* 833 F.2d 468, 471 (3d Cir. 1987) (citations omitted).  Oliver's claim for inadequate medical care is

---

[39] Oliver also alleges that the delay or denial of medical care for his digestive symptoms caused him to change his religious vegetarian diet and violate his religious beliefs.  To the extent he seeks to raise a Free Exercise claim against Susie, it is not plausible.  His allegation that Susie "place[d] a substantial burden on me to modify my behavior to violate my dietary religious beliefs" (Compl. at 11) merely parrots the legal standard and is conclusory.  Oliver does not allege that Susie had any role in limiting his diet or that she created a "substantial burden" on the exercise of his faith by not timely treating his digestive issues.

thus analyzed under the Due Process Clause of the Fourteenth Amendment. Although "the constitutional protections afforded prisoners and pre-trial detainees against inadequate medical care arise from different textual sources, the standards governing the provision of medical care to each class are similar." *Hubbard I,* 399 F.3d at 166 n. 22.  To prevail on his inadequate medical care claim, Oliver must plead sufficient facts that, if proven, would establish that: (1) he had a serious medical need; and (2) prison officials were deliberately indifferent to that need.  *Parkell v. Morgan*, 682 F. App'x 155, 160 (3d Cir. 2017).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cnty. Corr. Inst.'l Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J.1979), *aff'd*, 649 F.2d 860 (3d Cir.1981)).  A medical condition is serious when the denial or delay of medical treatment causes "unnecessary or wanton infliction of pain."  *Id.*

A correctional official is deliberately indifferent to a serious medical need where she "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Oliver alleges that Susie disregarded his medical concerns of gas pains, bloating, constipation, and hemorrhoidal bleeding allegedly caused by his diet.  He claims that it took 12 days for "someone from the medical department" to see him. A deliberate

indifference claim premised on delayed treatment is plausible where "'the delay . . . was motivated by non-medical factors.'"  *Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017).  However, the lack of an identifiable medical reason explaining a treatment delay does not necessarily mean that the delay Oliver experienced was motivated by a non-medical reason.  *Id.*  "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment."  *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (citations omitted); *accord Rouse*, 182 F.3d at 197 (holding that a court may only find deliberate indifference where the prison official delays medical treatment based on a non-medical reason or prevents a prisoner from receiving recommended medical care).  Oliver does not allege that the delay was due to a non-medical reason.  Nor has he alleged sufficient facts showing that his twelve-day long digestive problems constituted a "serious medical need."  Thus, we shall dismiss this claim.

Oliver asserts that an unnamed medical provider did not provide him pain medication and did not perform a physical examination when he was finally seen.  Not only does Oliver fail to plausibly allege a serious medical need arising from his digestive issues, he fails to allege facts that rise to a level of deliberate indifference.  What he alleges are facts that, at most, would show negligence in addressing a medical condition or a disagreement over the course of treatment received.  *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) (explaining that deliberate indifference requires something "more than negligence").  Oliver does not aver facts that would show that a physical examination or pain medication was necessary to diagnose or treat his gas pains, bloating, constipation, and hemorrhoidal bleeding.  Hence, we shall dismiss this claim.

Oliver's conclusory allegation that Susie violated his rights under the Equal Protection Clause is likewise deficient. He alleges only that other inmates have their medical issues addressed in a timely fashion.

To establish an Equal Protection violation, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 306 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). Oliver does not allege any facts that would establish that he was treated differently due to his religion. Thus, his Equal Protection claim fails.

### *Access to the Courts*

Oliver asserts a First Amendment access to the courts claim against Castro, Martin, "JS", Jane/John Doe, and Smith. He alleges that Castro gave him empty promises about fixing the prison law library computer and kept the law library closed for a period of time. He asserts that Martin, JS, and Doe refused to certify or sign his prison account statement unless he provided a copy of the complaint he intended to file with the Court. Smith allegedly failed to provide him with an envelope. Finally, Castro, Martin, Smith, and JS allegedly caused him to be time-barred in another civil matter. None of his claims are plausible.

"A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996)). The right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying

16

claim, without which a plaintiff cannot have suffered injury by being shut out of court."

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  In other words, a prisoner claiming

that he was denied access to the courts must allege an injury traceable to the conditions

of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*)

(affirming dismissal of denial of access claims where plaintiff failed to tie alleged

deficiencies in library to harm in underlying action).  In general, an actual injury occurs

when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost

because of the denial of access to the courts.   *Christopher*, 536 U.S. at 415.   "[T]he

underlying cause of action, . . . is an element that must be described in the complaint."

*Id*.  Furthermore, if the plaintiff had an attorney, he cannot claim he was denied access to

the courts.  *Diaz*, 532 F. App'x at 63 (citing *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d

Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (*per

curiam*).

Oliver claims that he was prevented from pursuing a case in the United States

Court of Appeals for the Third Circuit to "present claimed violations in [his] case to be able

to have [his] case dismissed at the magisterial level at [his] preliminary hearing,"[40] causing

him to remain in custody pending his trial.  The Third Circuit had no jurisdiction to hear an

appeal of a Pennsylvania lower court's decision holding a defendant for trial.   *See*

*Schneider v. Colegio de Abogados de P.R.*, 917 F.2d 620, 628 (1st Cir. 1990) ("[L]ower

federal courts have no jurisdiction to hear appeals from state court decisions, even if the

state judgment is challenged as unconstitutional.").   Moreover, the state court docket

---

[40] Compl. at 13.

reveals that Oliver was represented by counsel in his criminal case, including when the law library was closed, his preliminary hearing was held and he later waived his arraignment.[41]   Because Oliver asserts only frivolous claims about a broken computer and library closure, his claim against defendant Castro fails.

Oliver also asserts that grievances he submitted about access to the law library computer did not fix the problem.  Claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*). Hence, this allegation fails to state a plausible claim.

Oliver asserts that Martin, JS, and Doe refused to certify or sign his prison account statement unless he provided a copy of the complaint he intended to file with the Court. Oliver does not allege any actual injury.  After he informed the Court that he was having

_____

[41] *Id*.

A court may consider matters of public record when conducting screening under § 1915.  *Castro-Mota v. Smithson*, No. 20-940, 2020 WL 3104775, at *1 (E.D. Pa. June 11, 2020) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)); *Harris v. U.S. Marshal Serv.*, No. 10-328, 2011 WL 3607833, at *2 (W.D. Pa. Apr. 6, 2011), *report and recommendation adopted as modified*, 2011 WL 3625136 (W.D. Pa. Aug. 15, 2011) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994)) ("In addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6), and hence, under the screening provisions of the PLRA.").  The Court may also take judicial notice of prior court proceedings.  *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (holding that court may take judicial notice of the record from previous court proceedings).

Oliver's criminal docket sheet indicates Attorney Holly Beth Feeney of the Berks County Public Defender Office represented him at his preliminary hearing before the Magisterial District Judge, *see Commonwealth v. Oliver*, MJ-23105-CR-0000340-2021, and entered an appearance on his behalf on November 19, 2021, in the Court of Common Pleas, *see Commonwealth v. Oliver*, CP-06-CR-0003831-2021, the same day Oliver waived arraignment on the pending criminal charges.

difficulty obtaining his account statement, he was permitted to file an affidavit in lieu of his account statement.[42]

Oliver claims that Smith refused to provide him an envelope to mail the Complaint in this case.  Yet, his Complaint was filed with an attached envelope.[43]  Again, he suffered no actual injury.

Finally, Oliver alleges that the Clerk of Court "incorrectly sent [an Order] to another inmate by the name Brian C. Oliver" located at another institution.[44]  Without explanation and any factual basis, he asserts that Castro, Martin, Smith, and JS were responsible. As a result of the mailing error, Oliver claims he was time-barred in another civil matter filed in this Court, Civil Action Number 19-5084.  Had he been able to access the library, Oliver asserts he could have filed an appeal or a Rule 60 motion to have his case reopened.[45]  Oliver fails to explain how these defendants were responsible for the Clerk of Court's incorrect mailing.  More importantly, despite his claim here, Oliver filed a Rule 60 motion to reopen his case in Civil Action 19-5084 on January 24, 2022.[46]  That motion was granted on February 15, 2022.[47]  Accordingly, Oliver did not suffer an actual injury.

## CONCLUSION

For the foregoing reasons, we shall grant his motion to proceed *in forma pauperis* and dismiss the Complaint.

---

[42] *See* Order ¶ 6, ECF No. 5.

[43] *See* Compl. at 24.

[44] *Id.* at 17.

[45] *Id.*

[46] Mot. For To Reopen Case Rule 60(a), *Oliver v. GD Corr. Food Serv.*, No. 19-5084, ECF No. 9.

[47] Order, *Oliver v. GD Corr. Food Serv.*, No. 19-5084, ECF No. 10.